IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY A. JOHNS and USIA                )
CORPORATION,                              )
                                          )
            Plaintiffs,                   )   Case No. CV05-1744-HU
                                          )
        vs.                               )     OPINION AND ORDER
                                          )
NESTUCCA RURAL FIRE PROTECTION            )
DISTRICT, ROYCE FLETCHER, an              )
individual; JOHN KIEFEL, an               )
individual,                               )
                                          )
            Defendants.                   )
—————————————————————————————————————————)

Daniel Dickerson
Matthew Arbaugh
Daniel W. Dickerson, P.C.
918 Oregon National Building
610 S.W. Alder Street
Portland, Oregon 97205
        Attorneys for plaintiff

Peter Mersereau
Barrett Mersereau

1    - OPINION AND ORDER

Mersereau & Shannon LLP
One S.W. Columbia Street, Suite 1600
Portland, Oregon 97258
      Attorneys for defendants

HUBEL, Magistrate Judge:

Kimberly Johns brought this action against defendants Nestucca Rural Fire Protection District (District), John Kiefel, and Royce Fletcher, asserting claims for relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985 29 U.S.C. § 660, and for assault, slander, intentional interference with economic relations, intentional infliction of emotional distress, and violation of Or. Rev. Stat. § 659A.230 (the whistleblower statute).

Plaintiff has voluntarily dismissed all claims except one for violation of Or. Rev. Stat. § 659A.230 against the District, claims for false imprisonment and assault against Kiefel and Fletcher, and a claim for intentional infliction of emotional distress against the District and Fletcher. Defendants move for summary judgment.

### Factual Background

Plaintiff Kimberly Johns was at all times a volunteer with the District. District volunteers are not paid money for their services, but they do receive life insurance providing benefits if they are killed on or off the job, and worker's compensation coverage. The Worker's Compensation coverage applies only when volunteers are serving the District.

2  - OPINION AND ORDER

The District pays for volunteers to attend training sessions, to ensure that they interact with other emergency personnel and to allow them to enhance their certifications. Volunteers occasionally also receive certain articles of clothing from the District, such as T-shirts, hats, and sweatshirts. Occasionally, the District provides them with meals. Volunteers receive no other benefits from the District.

Johns alleges that he was formerly captain of the District's water rescue team, a position he held until September 2, 2005, when he received a letter from defendant Royce Fletcher, Fire Chief of the District, terminating his services.

In his capacity as captain of the water rescue team, Johns arranged funding for some additional equipment for the team. Because new written safety policies were required after the equipment was obtained, Johns was asked to draft the policies. The District did not use the policies Johns drafted, but continued to use the new equipment. Johns warned the District of the need for proper guidelines and training on the new equipment.

Johns alleges that Fletcher repeatedly blocked his efforts to implement new policies for the equipment, prompting Johns to tell Fletcher he intended to file a complaint with Oregon OSHA, which Johns did in July 2004. Johns alleges that the day after he told Fletcher he was going to complain to OSHA, Fletcher, on a pretext, rescinded Johns's authorization to respond to fire

emergency calls.

In July 2004, Johns notified Fletcher of his intention to file an unlawful discrimination claim with the Oregon Bureau of Labor and Industries (BOLI) for Fletcher's rescission of Johns's authorization. In December 2004, Johns filed an action against the defendants in state court for violation of his whistleblower rights under Or. Rev. Stat. § 659A.230.

Johns alleges that between July 2004 and September 2005, Fletcher repeatedly singled him out for conflict and usurped his authority. On August 31, 2005, Johns issued a notice of training for the water rescue team, to be conducted on September 4, 2005. The next day, Fletcher and Kiefel, head of training for the District, rescinded the notice, stating that attendance at any training would be considered insubordination and result in disciplinary action. Fletcher and Kiefel ordered the team to go "off line" and cease all operations over the Labor Day weekend. Despite this order, the water rescue team held its training session, on September 4, 2005. Fletcher and Kiefel came to the meeting, and Fletcher ordered all members of the team to leave so that he and Kiefel could talk to Johns in private.

Johns alleges that as soon as he, Fletcher and Kiefel were alone in the room, Fletcher shut the door and Kiefel pulled out a tape recorder and began recording. Johns allegedly told Fletcher and Kiefel that he was uncomfortable with the situation

and attempted to leave the room. Fletcher said, in a raised voice, "You're not going anywhere!" and blocked the only exit from the room. Johns alleges that he attempted to leave the room a second time by reaching for the door handle, but that Fletcher repositioned himself to block Johns's access to the door handle.

Johns alleges that he attempted to leave a third time and Fletcher stepped in front of him and physically blocked his path. Fletcher then attempted to force Johns to accept a letter of termination, which Johns refused. Johns instructed Fletcher to send the letter to his attorney.

Johns alleges that after refusing to accept the letter, he again moved for the door and forced his way out of the room. Johns was followed by Kiefel, who took pictures of him.

Johns was subsequently terminated from his position.

## Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). On a motion for summary judgment, the court must view the evidence in the

light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. <u>Clicks Billiards Inc. v. Sixshooters Inc.</u>, 251 F.3d 1252, 1257 (9th Cir. 2001).

**Discussion**

1.    <u>The claim under Or. Rev. Stat. § 659A.230</u>

Oregon's whistleblower statute provides as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

Defendants assert that Johns does not have standing to bring an action pursuant to § 659A.230 because he is not an employee. Johns concedes that he was a volunteer, and does not dispute that he received only non-pecuniary benefits for his services. He asserts that he hoped to obtain an enhanced reputation in the community that he could parlay into increased sales for his business and, possibly, political gain.

Defendants point to the definition contained in Oregon's wage and hour laws, Or. Rev. Stat. § 653.010, which defines "employ" to exclude "voluntary or donated services performed for

6    - OPINION AND ORDER

no compensation or without expectation or contemplation of compensation as the adequate consideration for the services performed ...” Defendants argue that Johns's “inchoate and highly speculative ‘compensation,’” i.e., enhanced reputation leading to increased sales and possible political gain, cannot be characterized as “adequate consideration.” Defendants argue further that the benefits received by the District's volunteer firefighters—a few articles of clothing, training in firefighting and emergency medical care, the occasional meal, and worker's compensation and life insurance benefits—do not constitute monetary compensation.

Moreover, Oregon's wage and hour statutes make a distinction between “volunteer firefighters,” and “firefighters.” Section 652.050, which provides definitions for Or. Rev. Stat. § 652.050 to 652.080, provides as follows:

> (1) “Firefighter” means a person whose principal duties consist of preventing or combating fire or preventing loss of life or property from fire.
> (2) “Regularly organized fire department” means any organization maintained for the purpose of preventing or combating fire and employing one or more persons on a full-time basis as firefighters.
> (3) “Volunteer firefighter” means a person who performs services as a firefighter for a regularly organized fire department and whose work hours and work shifts <u>are voluntary and whose volunteer service is not a condition of employment</u>.

(Emphasis added). The wage and hour statutes apply to “firefighters,” or to persons “employed on a full-time basis as

7    - OPINION AND ORDER

a firefighter by any regularly organized fire department," but not to volunteer firefighters.

Defendants contend that under relevant case law, Johns is not an employee, citing <u>Jylha v. Chamberlain</u>, 168 Or. 171, 175-76 (1942)(the term "employee" in the Oregon Employers' Liability Act is to be construed as referring to "one who renders service for another for wages or salary.") and <u>Hyland v. Wonder</u>, 972 F.2d 1129, 1140-41 (9th Cir. 1992)(volunteer in San Francisco Juvenile Probation Department, who was terminated as a volunteer, did not have a property interest in continuation of his volunteer status and therefore could not state a claim under § 1983 based on denial of due process).

Johns counters that the applicable definition is found at Or. Rev. Stat. 659A.001, which defines "employee" merely by excluding "any individual employed by the individual's parents, spouse or child or in the domestic service of any person." Or. Rev. Stat. § 659A.001(3). The term "employer" is there defined as

> any person who in this state directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed.

Or. Rev. Stat. § 659A.001(4).

It is an axiom of statutory construction that statutes are to be interpreted, if possible, to give each word some operative

8   - OPINION AND ORDER

effect. See, e.g., <u>United States v. Menasche</u>, 348 U.S. 528, 538-39 (1955); <u>Walters v. Metropolitan Ed. Enterprises</u>, 519 U.S. 202, 117 S.Ct. 660  (1997). Individual words of a statute are not to be viewed in isolation, but rather to be interpreted by reading the relevant statutory provisions as a whole. <u>Leisnoi, Inc. v. Stratman</u>, 154 F.3d 1062, 1066 (9th Cir. 1998); see also <u>Carpenters Health & Welfare Trust Funds v. Robertson</u>, 53 F.3d 1064, 1067 (9th Cir. 1995)(interpretation of statutory language requires more than viewing words or subsections in isolation; meaning is derived from context).

Section 659A.001(4) does not address the difference between an employee and a volunteer. Construing § 659A.001(4) in a manner that would make it contradict the provisions of Or. Rev. Stat. § 653.010 is neither necessary to its meaning, nor obedient to the rules of statutory construction. I agree with defendants that Johns's status as a volunteer places him outside the provisions of Or. Rev. Stat. § 659A.230.

Johns also contends that a later decision in <u>Hyland v. Wonder</u>, 117 F.3d 405, 412 (9th Cir. 1997)(<u>Hyland II</u>) indicates that in some circumstances, a volunteer is entitled to protections generally provided only to employees. Johns argues that he is not asserting a claim for violation of due process, but rather a claim for unlawful retaliation, based on his First Amendment right not to be retaliated against for his protected

9   - OPINION AND ORDER

speech.

In Hyland II, the court acknowledged that while in Hyland I, plaintiff failed to state a due process claim because he lacked a property or liberty interest in his position as a volunteer, that analysis did not apply to plaintiff's First Amendment.

> As we held above, dismissal from a volunteer position can constitute unconstitutional retaliation. There is ample authority that retaliatory acts other than actual discharge can serve as the basis for a First Amendment claim. See, e.g., Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990)(ostracism, silent treatment, selective enforcement of the rules, and poor reviews can all be acts of retaliation); Allen v. Scribner, 812 F.2d 426, 429 (9th Cir. 1987)(retaliation included transfer, defamatory statements to the media, intimidation, and harassment), amended, 828 F.2d 1445 (9th Cir. 1987).

The flaw in Johns's reliance on Hyland II is that he has not alleged a First Amendment claim. He has asserted a nonconstitutional claim under a state statute which expressly applies to employees and employers. Hyland II does not save this state statutory claim.

Defendants are entitled to summary judgment on the whistleblower claim under Or. Rev. Stat. § 659A.230.

2.    The assault claim

Johns has asserted a common law claim for assault against Fletcher and Kiefel, based on their having physically prevented

10  - OPINION AND ORDER

him from leaving the room during the conference by blocking his
path to the door. Defendants assert that Johns has not made out
a claim for assault because he has not alleged that the
defendants made a threat against him.

Assault is "an intentional attempt to do violence to the
person of another coupled with present ability to carry the
intention into effect." <u>Bollaert v. Witter</u>, 101 Or. App. 654, 658
(1990). Words alone do not amount to an assault. <u>Id.</u>

In his deposition, Johns described the incident as follows:

> And I says, well, look it, you need to let
> me out of this room. And Chief Fletcher
> stood in front of me and puffed up his
> chest and said, you're not going until this
> meeting is over. I said, am I under arrest?
> He said no. I said, you need to let me out
> of this room. He said no. Then he proceeded
> to tell me about some letter that he was
> giving me of a notice of termination ... He
> hit me in the chest with the letter. I then
> took the  letter or--I didn't touch the--I
> don't remember what happened to the letter,
> but I didn't take the letter. I told him to
> mail it to my attorney. I asked them again
> to let me out of the room. He refused. I
> asked him again to let me out of the room.
> He refused. I believe I asked him a third
> time to let me out of the room. He refused.
> I was feeling highly uncomfortable, highly
> agitated, highly threatened. And so I
> reached around him to get out of the room,
> unlocked the door, and went out of the
> room. And there was some discussion, and I
> told them, you can talk to my attorney. See
> you later.
>
>                    * * *
>
> Q:   When you pushed around [Fletcher] to get out,
>      was that difficult? Did Chief Fletcher resist

> you getting out of the room when you did actually leave?
>
> A:   I made contact. I don't know.
>
> Q:   Well, what I'm asking is, do you remember him moving so as to be more in your way or moving so as to get out of your way, or none of the above.
>
> A:   I made contact, so I don't know what his intentions are. I was going out the door, whether he was going to try to stop me or not, and that ensued some physical contact. I don't know if he was resisting, I don't know if he was moving, I don't know what his intentions were. My intentions were to leave the room.
>
> Q:   And you did?
>
> A:   And I did.

Mersereau Affidavit, Exhibit 2 (Johns deposition) 134:16-135:20; 136:20-137:12. Johns testified that he felt threatened by Fletcher when he told Johns he wasn't going anywhere until the meeting was finished. Mersereau Affidavit, Exhibit 3 (Johns deposition) 138:22-139:6. Johns has alleged that he anticipated acts of violence; when asked at the deposition what those acts of violence were, he responded:

> A:   Physical contact, you know, invasion of my personal space.
>
> Q:   Well, were you--was there ever a point in which you were afraid that someone would do violence to you--
>
> A:   Yes.
>
> Q:   --by invading your personal space?
>
> A:   Yes.
>
> Q:   You call that violence?
>
> A:   I believe that invasion of personal space escalates, and somehow violence can occur when you're within a certain distance of someone.

12  - OPINION AND ORDER

Q:    Okay. Did Mr. Kiefel or Chief Fletcher ever do
      anything that made you think they were about to
      strike you?

A:    When I attempted to leave the room and Chief
      Fletcher stepped a few--I don't even know how
      far it was. But just say that Chief Fletcher
      repositioned himself. And I remember we were in
      a small room with filing cabinets. There's not
      much room to go. But when that happened and he
      made the statement, you're not going anywhere
      until this meeting is over, at that point I
      believed that it could escalate into a violent
      situation.

Q:    Did either Mr. Kiefel or Chief Fletcher raise
      their hands in a threatening manner?

A:    Just with the letter.

Q:    Did that injure you when you were struck with the
      letter?

A:    No.

Id. at 142:14-143:19.

        I conclude that Johns has not made out a claim for assault
because he has not pleaded or proven an intentional attempt by
the defendants to do violence to Johns. Johns argues that being
forced into a closed room and blocked from leaving, having his
personal space invaded by others, and being "hit" in the chest
with a letter, constitute assault. I disagree. Being forced into
a closed room and blocked from leaving is an allegation that goes
to a claim of false imprisonment, not assault. The words, "you're
not going anywhere until this meeting is over," coupled with an
invasion of another's "personal space," and throwing a letter,
without more, do not constitute an intentional attempt to do

violence.

Defendants are entitled to summary judgment on the assault claim.

### 3.    The false imprisonment claim

False imprisonment consists of 1) the detention or restraint on the freedom of movement of the person and 2) the unlawfulness of the detention or restraint. Lukas v. J.C. Penney Co., 233 Or. 345 (1963). The confinement "may be accomplished by actual or apparent physical barriers, compulsive physical force, a threat to apply physical force or assertion of legal authority." Walker v. City of Portland, 71 Or. App. 693, 697 (1985). There need not be a battery or actual physical contact with the person of the plaintiff. See Restatement (Second) of Torts § 38 (1965).

Words, acts or gestures that result in a reasonable fear of personal difficulty or injury to person, property or reputation will support a claim of false imprisonment. Lukas, 233 Or. at 353.

Johns argues that being told he could not leave the room until the meeting was over and having the exit blocked by Fletcher's body, which ultimately required Johns to move around Fletcher in order to leave, is sufficient to constitute a claim for false imprisonment. Fletcher's body constituted an "apparent

14  - OPINION AND ORDER

barrier," especially in conjunction with the statement that Johns was not going to be allowed to leave the room.

The defendants argue that the "confinement," if any, was too *de minimis* in nature and duration to support a claim for false imprisonment, because Johns was never physically confined, and the moment Johns chose to leave the room, he was able to do so without resistance. What damages, if any, flow from the confinement is for the trier of fact. I conclude that Johns's false imprisonment claim survives summary judgment.

    4.   <u>The claim for intentional infliction of emotional distress</u>

The elements of intentional infliction of emotional distress are 1) that the defendant intended to inflict severe emotional distress on the plaintiff; 2) that the defendant's acts caused the plaintiff severe emotional distress; and 3) that the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct or exceeded any reasonable limit of social toleration. <u>Patton v. J.C. Penney Co.</u>, 301 Or. 117, 122 (1986); <u>Sheets v. Knight</u>, 308 Or. 220, 236 (1989). Insults, harsh or intimidating words, or rude behavior ordinarily do not result in liability under this cause of action, even when intended to cause distress. <u>Hall v. The May Department Stores</u>, 292 Or. 121, 135 (1981).

Johns testified at his deposition that this claim was based on Fletcher's having locked him in a room and told him he was not going to be allowed to leave. Mersereau Affidavit, Exhibit 6 (Johns deposition) 159:10-24. Defendants contend that this conduct does not amount to "an extraordinary transgression of the bounds of socially tolerable conduct." I agree.

Defendants are entitled to summary judgment on this claim.

## Conclusion

Defendants' motion for summary judgment (doc. # 20) is granted in part and denied in part: granted with respect to the whistleblower, assault, and intentional infliction of emotional distress claims, and denied with respect to the false imprisonment claim.

IT IS SO ORDERED.

DATED this 2nd day of February, 2007.

/s/  Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge